IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **NST Global, LLC, d/b/a SB Tactical**<br><br>Plaintiff,<br>v.<br><br>**Ewer Enterprises LLC d/b/a Shockwave Technologies; Shockwave Technologies, LLC; KAK Industry LLC; Martin Ewer; and Wayne Emond.**<br><br>Defendants. | Case No. 8:15-cv-00935-JDW-MAP |

**DEFENDANTS EWER ENTERPRISES, SHOCKWAVE TECHNOLOGIES, AND MARTIN EWER'S *DAUBERT* MOTION AND SUPPORTING MEMORANDUM TO EXCLUDE EXPERT WITNESS TESTIMONY BY CLAIRE FOLEY**

Defendants Ewer Enterprises, LLC, Shockwave Technologies, LLC, and Martin Ewer, pursuant to Evidence Rule 702 and *Daubert*[1], move the Court to exclude the expert witness testimony of Claire Foley.

The Court should exclude Foley's testimony because she improperly includes Defendants' profits as a damages remedy. In addition, her damages computation commences prior to the permissible accrual date (the date of actual notice). Foley improperly includes Plaintiff's SB47 product in the damages computation (Plaintiff's CFO Shaw testified that the SB47 product is not covered by the design patent). Foley fails to consider retail sales, instead relying solely on wholesale sales. She makes critical assumptions not from her

---

[1] *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579 (1993).

expertise, but rather from Plaintiff's lawyers; she conducted no interviews or investigation to independently verify the data. Each of these errors in Foley's report results in unreliable testimony that fails to assist the jury in drawing proper inferences from the facts of this case.

## STANDARD OF REVIEW

Evidence Rule 702 and *Daubert* govern the admissibility of expert testimony.

Evidence Rule 702 allows reliable, relevant testimony by a qualified expert for the purpose of assisting a jury to draw proper inferences from the facts of a case. The Court should exclude expert testimony if: (1) testimony is not based upon sufficient facts or data; (2) testimony is not the product of reliable principles and methods; or (3) testimony is not based upon reliable application of principles and methods to the facts. *See* Fed. R. Evid. 702.

The *Daubert* standard establishes the trial court's role as the gate-keeper in determining admissibility of evidence. *Daubert*, 509 U.S. at 589, 597.

## ANALYSIS

Plaintiff's expert witness on design patent damages, Claire Foley, fails to meet Rule 702 requirements and the *Daubert* standard to testify as an expert witness, and the Court should exclude her testimony. Foley's damages computation is not based upon sufficient facts or data and fails to reliably apply patent laws to the facts, resulting in an incorrect calculation. The miscalculation is due to each of the reasons below:

1. Foley improperly includes Defendants' profits as an available remedy and misapplies patent law principles;

2. Foley improperly starts calculating damages before patent notice;

3. Foley improperly includes the SB47 in the damages computation;

4. Foley fails to consider retail sales; and

5. Foley's lost profits computation is based upon critical assumptions with no independent interviews or investigation.

Each of these failures is discussed in turn.

### I. FOLEY IMPROPERLY INCLUDES DEFENDANTS' PROFITS AND MISAPPLIES PATENT LAW PRINCIPLES

Foley's damages computation improperly includes Defendants' profits. This is improper because Plaintiff did not plead Defendants' profits as a remedy in its demand for design patent infringement. In some design patent cases, a patent owner may recover a defendant's profits under 35 U.S.C. § 289 instead of damages under 35 U.S.C. § 284. A longstanding distinction exists in patent law between damages and profits. *Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 824 (Fed. Cir. 1992).

In this case, Plaintiff has not pled – nor demanded – recovery of Defendants' profits under § 289. *See* Plaintiff's First Amended Complaint, Dkt. 31, p. 11, ¶ 54. Plaintiff's wherefore clause for design patent infringement seeks an injunction under § 283 and damages under § 284. Plaintiff did not plead Defendants' profits under § 289 as a remedy, and it is not part of the case. Thus, including Defendants' profits in her damages computation for design patent infringement is improper.

Even if Plaintiff had pled recovery of Defendants' profits under § 289, Foley's computation misapplies the law. For design patent infringement, "a patentee may not recover both infringer profits and additional damages under

§ 284." *Catalina Lighting, Inc. v. Lamps Plus, Inc.*, 295 F.3d 1277, 1291 (Fed. Cir. 2002). The last paragraph of § 289 states:

> Nothing in this section shall prevent, lessen, or impeach any other remedy which an owner of an infringed patent has under the provisions of this title, *but he shall not twice recover the profit made from the infringement. Id.* (emphasis in original).

In computing damages, Foley improperly sums Plaintiff's lost profits with Defendants' profits in direct violation of *Catalina* and § 289. Foley states, "Total damages are equal to the sum of the additional profit made by SB Tactical, and the profit made by the Defendants . . . ."[2]

Foley's opinion should be excluded under Rule 702 because Plaintiff does not plead the additional remedy under § 289, and Foley fails to reliably apply patent law principles by summing Plaintiff's lost profits and Defendants' profits. The next error shows why Foley's calculation starts too early.

**II. FOLEY'S DATE FOR ACCRUAL OF DAMAGES STARTS TOO EARLY**

Foley improperly begins calculating damages on March 2015, instead of the date of actual notice, April 20, 2015. When a patented product is not marked with the patent number, "no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice." 35 U.S.C. § 287. "Filing of an action for infringement shall constitute such notice." *Id.*

---

[2] Rpt. Claire Foley ¶ 61 (July 27, 2016), Exhibit A.

"Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device." *Amsted Industries Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994). "It is irrelevant . . . whether the defendant knew of the patent or knew of his own infringement." *Id.* "The correct approach to determining notice under section 287 must focus on the action of the patentee, not the knowledge or understanding of the infringer." *Id.*

In this case, Plaintiff did not mark the Patented Product with the patent number. Plaintiff never sent Defendants a "cease and desist" letter. Actual notice is the filing of Plaintiff's Complaint on April 20, 2015. *See* Dkt. 1. As such, Plaintiff's accrual of damages does not begin before April 20, 2015.

Instead, Foley begins her calculation with Defendant Shockwave's first sale in March 2015.[3] Foley incorrectly states that the entire damages period is from March 2015 to May 2016.[4] Foley fails to reliably apply patent law principles concerning notice by ignoring the fact that Plaintiff does not mark its Patented Product with the patent number and provided no actual notice of infringement until April 20, 2015. The third error below shows that Foley's computation improperly includes products not covered by the design patent.

### III. FOLEY IMPROPERLY INCLUDES SB47 SALES IN THE COMPUTATION

Foley improperly includes sales of Plaintiff's SB47 product in her damages computation.[5] The Patented Design does not include Plaintiff's SB47

---

[3] *See* Rpt. Claire Foley ¶ 27.
[4] *See* Rpt. Claire Foley ¶ 8.
[5] *See* Rpt. Claire Foley ¶¶ 9, 10, 15, 18.

5

product. When Plaintiff was asked which of its products are covered by the design patent, Plaintiff responded that the SB15 is covered by the patent, not the SB47.

> Q: My question to you is, which products does SB Tactical sell that fall within the claims of this 896 patent?
>
> A: This would be the SB15.[6]
>
> . . .
>
> Q: The question is, other than the SB15, which products does SB Tactical sell that falls within the scope of the invention claimed in the 896 patent?
>
> A: So, the SBX. Yeah, the SBX.[7]
>
> . . .
>
> Q: Does the invention claimed in the 896 patent look like the SB15?
>
> A: Yes.
>
> Q: Does the invention claimed in the 896 patent look like the SBX?
>
> A: No.[8]

By only identifying the SB15 and waffling on the SBX, Plaintiff admits that the SB47 is not covered by the design patent. When asked, Foley confirmed that she assumes the SB47 is covered by the design patent:

> Q: How do you know that the SB15 and the SB47 are covered by the design patent? Is that an assumption you made or were provided?

---

[6] Depo. NST Global, LLC 42:14–17 (July 8, 2016).
[7] Depo. NST Global, LLC 44:16–19 (July 8, 2016).
[8] Depo. NST Global, LLC 45:2–7 (July 8, 2016).

A: Yes, that's an assumption. Yes, exactly.[9]

. . .

Q: Isn't it true that if at trial it is found that the D896 patent does not cover plaintiff's SB47 product your damage calculations in your report are incorrect?

A: Sure. If my assumption that they do not infringe is not the accurate assumption, then yes.[10]

. . .

Q: Are you aware that in that deposition Grant Shaw testified on behalf of plaintiff that the SB47 was not covered by the D896 patent?

A: No, that's not my understanding; but again, I've been asked to assume infringement for the purposes of this report.[11]

. . .

Q: If Mr. Grant [sic] testified that the D896 patent does not cover the SB47 product, that would change your damages' opinion. Correct?

A: I'm not sure that that's -- that's not my understanding of Grant Shaw's testimony. But if it were correct that the SB47 does not infringe the design patent, then that product would need to be removed from my calculations, yes.

---

[9] Depo. Foley 50:8–11 (August 15, 2017).
[10] Depo. Foley 58:10–15.
[11] Depo. Foley 59:12–17.

> Q: And when you say the SB47 infringed the patent, what you mean is that the SB47 is covered by the design patent and therefore its sales would be affected. Correct?
>
> A: Yes, yes. Thank you.[12]

Foley fails to reliably apply patent damage principles when she includes affected sales of the SB47, which Plaintiff admits is not a product covered by the design patent. Foley also fails to consider retail sales when assessing damages in her report as discussed in the next section.

**IV. FOLEY FAILS TO INCLUDE RETAIL SALES IN THE COMPUTATION**

Foley cannot show that sales of Plaintiff's Patented Product were displaced by Defendants' Accused Device without considering retail sales. "To recover under [the *Panduit*] test, the patent owner must prove (1) a demand for the patented product, (2) an absence of acceptable non-infringing substitutes, (3) the manufacturing and marketing capability to exploit the demand, and (4) the amount of profit the patent owner would have made." *Stand. Havens Products, Inc. v. Gencor Industries, Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works*, 575 F.2d 1152, 1156, (6th Cir. 1978).

Foley failed to investigate or consider retail sales when rendering her damages computation. By failing to do so, demand for the Patented Product, the existence of acceptable non-infringing substitutes, or the manufacturing and marketing capability to exploit the demand, her testimony is fatally defective.

---

[12] Depo. Foley 61:10–22.

When asked, Foley confirmed that she had not considered retail sales:

> Q: Your analysis does not take into consideration plaintiff's distributors' retail sales. Correct?
>
> A: Correct. Yes, correct.
>
> Q: And these distributors sell directly to the customers. Correct?
>
> A: Correct.[13]

Foley's report improperly focuses on Plaintiff's sales to its distributors. By not investigating retail sales to end users, Foley lacks data concerning distributors' sales histories, distributors' inventories, demand from consumers, or what, if any, causation exists to conclude that the Accused Device displaced sales of Plaintiff's distributors. Defendants do not sell the Accused Device to Plaintiff's distributors so there can be no wholesale displacement.

Displacement of retail sales is the proper analysis because gun owners are the consumers, not distributors selling firearm accessories. Without basing her computation on retail sales, Foley cannot show lost profits, and her lost profits calculation is incorrect. Instead of investigating retail sales for proving lost profits, Foley was asked to assume critical facts by Plaintiff's lawyers.

**V. FOLEY ASSUMED CRITICAL FACTS**

In her calculation, Foley uses insufficient facts and data, instead relying upon assumptions provided by Plaintiff's lawyers. The word "assume" appears in her report nineteen times, and the word "assumption" appears seven times. As stated above, Foley incorrectly assumes the § 289 remedy is available to Plaintiff, assumes the accrual date of damages, assumes that Plaintiff's SB47

---

[13] Depo. Foley 16:19–24.

product is an affected product, and assumes 100% flow-through of wholesale to retail sales.

In making her incremental profit calculations, Foley also assumes Defendant Shockwave will sell its remaining units in inventory, assumes Shockwave's per unit cost, assumes Defendant KAK's revenue per unit, and assumes KAK's cost per unit.[14] Foley states that she has been asked by Plaintiff's lawyers to assume the relevant market is a two-supplier market, with no competitors.[15]

These facts concerning inventories, costs, revenues, and market effects are critical to patent damage computations and proving the *Panduit* elements. Being asked to assume such critical facts by Plaintiff's lawyers places Foley in a position where she cannot rely upon her qualifications as an economist to calculate lost profits. Foley's job is to explain to this Court her computation based upon inventories, costs, revenues, and the market effects, without being asked to parrot assumptions provided to her by Plaintiff's lawyers. Foley was essentially instructed to assume causation.

Even if Foley had applied the correct remedies with the proper accrual date to the actual affected products, her computation is based upon assumptions of critical facts concerning inventories, costs, revenues, and market effects instead of relying upon sufficient facts and data independently verified. Each of these errors alone leads to an incorrect damages calculation.

---

[14] *See* Rpt. Claire Foley, Exhibit 7, nn. 2b, 1c, 4b, 4c.
[15] Rpt. Claire Foley ¶ 31.

When combined, the result is testimony that fails to meet the reliability requirements of Rule 702 and *Daubert*.

## CONCLUSION

Plaintiff's expert witness, Claire Foley, fails to meet Rule 702 requirements and the *Daubert* standard for admissibility, and the Court should exclude her testimony in this case.

## LOCAL RULE 3.01(G) CERTIFICATION

I HEREBY CERTIFY that I conferred with Plaintiff's counsel and Co-defendant's counsel concerning the matters set forth in this motion, and only Plaintiff's counsel opposes the relief sought in this motion.

s/ *Nathan P. Suedmeyer*
Nathan P. Suedmeyer, Esq.
Fla. Bar # 70787
nathan@larsonpatentlaw.com

Justin P. Miller, Esq.
Fla. Bar # 84495
justin@larsonpatentlaw.com

Herbert W. Larson, Esq.
Fla. Bar # 969930
bill@larsonpatentlaw.com

Patrick A. Reid, Esq.
Fla. Bar # 112708
patrick@larsonpatentlaw.com

Larson & Larson, P.A.
11199 69th Street
Largo, FL 33773
(727)-546-0660 tele
(727) 213-6922 fax
Trial Counsel for Defendants
Ewer Enterprises, LLC,
Shockwave Technologies, LLC,
and Martin Ewer

## **C**ERTIFICATE OF **S**ERVICE

I HEREBY CERTIFY that on September 22, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system. I further certify that I mailed the foregoing document and notice of electronic filing to the following non CM/ECF participants: NONE.

s/ *Nathan P. Suedmeyer*
Nathan P. Suedmeyer, Esq.
Fla. Bar # 70787
nathan@larsonpatentlaw.com